IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LEWIS T. HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-6082-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

      Plaintiff Lewis Hughes challenges the Commissioner's decision finding him not disabled and denying his application for Disability Insurance Benefits ("DIB"). I have jurisdiction under 42 U.S.C. §§ 405(g) and 1313(c). For the following reasons, the Commissioner's decision is AFFIRMED.

      I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

PAGE 1 - OPINION AND ORDER

## THE ALJ'S FINDINGS

The Administrative Law Judge ("ALJ") made his decision based upon a five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9th Cir. 1987); 20 C.F.R. § 404.1520(a).

The ALJ found that Mr. Hughes' severe impairments include "multilevel degenerative disc disease status-post cervical fusion in the remote past; biceps tendon repair, now resolved; patellofemoral chondromalacia; and a substance abuse disorder." Tr. 25. The ALJ found that these impairments did not meet or equal a disorder "listed" in the Commissioner's regulations, and assessed Mr. Hughes' residual functional capacity ("RFC"):

> The claimant retains the residual functional capacity to lift 40 pounds occasionally and 20 pounds frequently. He should have no frequent, repetitive use of the right knee and avoid repetitive bending or twisting with the right knee. He should avoid interaction with the general public.

*Id.* The ALJ found that this RFC allowed Mr. Hughes to perform work existing in the national economy and therefore found Mr. Hughes not disabled. Tr. 25-26.

## ANALYSIS

Mr. Hughes challenges the ALJ's evaluation of two medical opinions, his own testimony and that of a lay witness, and the ALJ's questions to a vocational expert.

**I.    Physician Opinions**

Mr. Hughes challenges the ALJ's evaluation of examining physicians Drs. Schilperoot and MacRitchie. The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted physician's opinion and "clear and convincing reasons" for rejecting an uncontroverted opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

This evaluation may set out a detailed and thorough summary of the facts and conflicting clinical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a physician, however, is not necessarily conclusive to the ultimate issue of disability, which is reserved for the Commissioner. 20 C.F.R. § 404.1527(c)(1).

### a.     **Examining Physician Dr. Schilperoot**

Mr. Hughes contends that the ALJ omitted aspects of examining physician Dr. Schilperoot's opinion. Pl.'s Opening Br. 19. Mr. Hughes specifically cites the ALJ's assessment of Dr. Schilperoot's findings regarding his cervical and lumbar spine. *Id.* at 19-20. The ALJ summarized Dr. Schilperoot's findings:

> [A] normal gait, positive shoulder movement, symmetrical reflexes, and some sensory deficit. Dr. Schilperoot was somewhat skeptical of the sensory deficits and a change in pain symptoms upon distraction, suggesting exaggeration of symptoms and raising the possibility of malingering. Dr. Schilperoot diagnosed tendon and knee strain conditions, and noted degenerative changes, the past fusion, and evidence of some L5 radiculopathy. He did not find the claimant capable of past work, but he did not specify particular functional limitations.

Tr. 22 (citations omitted).

The record shows that Dr. Shilperoot conducted an extensive and detailed twenty-three page examination and review of Mr. Hughes' medical records in February 2005. Tr. 390-413. Dr. Shilperoot discussed Mr. Hughes' cervical limitations:

> As regards the neck and upper extremity, there is a relatively severe universal limitation in cervical spine motions which did not meet validity reproducibility criteria and which reflect the relatively serious amounts of multilevel degenerative arthritis vastly disproportionate for his very young age.

Tr. 408. Dr. Schilperoot did not document any limitations stemming from Mr. Hughs' neck.

PAGE 3 - OPINION AND ORDER

Regarding Mr. Hughes' lumbar spine, Dr. Schilperoot wrote that "motor strength testing and deep tendon reflexes fall entirely within normal limits" and that "though lumbar spine forward flexion falls entirely within normal limits, there is a relatively serious restriction of extension and right and left lateral flexion." *Id.* Dr. Schilperoot also found L5 radiculopathy (tr. 413) but did not assign any lifting restrictions due to this condition.

The ALJ's summary referenced these findings. While the ALJ omitted specific reference to Dr. Schilperoot's finding that Mr. Hughes' lumbar extension and lateral flexion was limited, the ALJ's finding that Mr. Hughes had "limited range of motion" reflects Dr. Schilperoot's assessment. Tr. 22. Mr. Hughes additionally fails to show that limited lumbar flexibility establishes lifting restrictions beyond those specified in the ALJ's RFC assessment. Any omission by the ALJ's is therefore inconsequential. *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006), *see* also *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ's analysis of Dr. Schilperoot's opinion is sustained.

    **b.**    **Examining Physician Dr. MacRitchie**

Mr. Hughes contends that the ALJ failed to note Dr. MacRitchie's conclusion that Mr. Hughes was "unable to look up," asserting that this opinion is consistent with Dr. Schilperoot's opinion. Pl.'s Opening Br. 18 (citing tr. 377). The indicated citation states that Mr. Hughes is "limited in his ability to look up and is unable to kneel or bend on the right knee." Tr. 377.

The ALJ noted Dr. MacRitchies's assessment of "mildly limited cervical and lumbar range of motion." Tr. 21. The record shows that Dr. MacRitchie wrote, "cervical range of motion is mildly limited especially with extension and right lateral rotation. Sperling's maneuver within these ranges is negative." Tr. 376. Dr. MacRitchie did not state that Mr. Hughes is

PAGE 4 - OPINION AND ORDER

unable to look up. Tr. 377. The ALJ's finding is consistent with the record.

Mr. Hughes also contends that the ALJ's evaluation of Dr. MacRitchie's opinion is inconsistent with Dr. Shilperoot's opinion. As noted, Dr. Schilperoot did not assess any neck limitations. Dr. Shilperoot noted cervical degenerative changes, which the ALJ discussed. Mr. Hughes fails to establish an inconsistency in the ALJ's analysis of the opinions of Drs. Schilperoot and MacRitchie. The ALJ's analysis of the record is based upon substantial evidence and is affirmed.

## II.    Mr. Hughes' Credibility

Mr. Hughes contends that the ALJ failed to provide clear and convincing reasons for finding him not credible. Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely

PAGE 5 - OPINION AND ORDER

because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 504 F.3d 880, 883 (9th Cir. 2006).

    a.    **Work History**

The ALJ noted that Mr. Hughes underwent a cervical fusion before the period under review, and that Mr. Hughes returned to work following this procedure. Tr. 19. The ALJ also noted that Mr. Hughes returned to work following repair of his ruptured left bicep tendon. *Id*. The ALJ's subsequent conclusion that Mr. Hughes performed work activity during the period he claims disability is thus consistent with the record. Tr. 19, 64. Mr. Hughes does not suggest this was a "failed work attempt," Pl.'s Opening Br. 15, and it will not be evaluated as such. The ALJ's notation regarding Mr. Hughes' return to work is based upon the record and is therefore affirmed.

    b.    **Medical Evidence**

Mr. Hughes cites the ALJ's characterization of July and August 2001 neck and back examinations as "normal," and submits that a September 2001 MRI examination and a subsequent MRI two years later discredits this finding. Pl.'s Opening Br. 15-16. Mr. Hughes also contends that after returning to work he "suffered more injury to the cervical area" and that he has a diminished left grip resulting from his biceps injury. Pl.'s Opening Br. 15.

Dr. Schilperoot's examination, discussed above, was conducted more than four years after the August 2001 examinations Mr. Hughes presently challenges. Tr. 390-413. Regarding the August 2001 findings, the ALJ noted the August 2001 imaging studies and concurrent medical reports showing Mr. Hughes' cervical muscle spasms and tenderness, with full range of motion. Tr. 19-21. The ALJ's finding that Mr. Hughes had grossly normal back and neck examinations in

PAGE 6 - OPINION AND ORDER

July and August 2001 (tr. 21) is therefore based upon the record.  The record also shows that Mr. Hughes regained full and nearly full left grip strength in December 2001 and July 2002, respectively.  Tr. 217, 240.  The ALJ's indicated findings regarding the August 2001 examinations and Mr. Hughes' bicep tendon impairment are based upon the record and are appropriate in conjunction with the ALJ's remaining credibility findings.  *Smolen*, 80 F.3d at 1284, *see* also *Robbins*, 466 F.3d at 883.

    c.    **Activities of Daily Living**

The ALJ found that Mr. Hughes' "ability to go camping, engage in physical altercations, and work in the woods from time to time until his lay off, suggests that he was far more capable than he alleged."  Tr. 23.

The ALJ may cite activities of daily living to show that a claimant's activities contradict allegations of total disability.  *Orteza*, 50 F.3d at 750.  The Ninth Circuit notes, "Although the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [claimant], the ALJ's interpretation was rational, and "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."  *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (citing *Magallanes*, 881 F.2d at 750).  This court therefore affirms the ALJ's finding that Mr. Hughes' activities contradict the limitations described in his testimony.

    d.    **Unemployment Benefits**

The ALJ stated that Mr. Hughes' application for unemployment benefits undermined his credibility because he represented himself as able to work.  Tr. 23.  The Commissioner concedes that Mr. Hughes' application for unemployment benefits did not assert that he could perform full

PAGE 7 - OPINION AND ORDER

time work. Def.'s Br. 9. The ALJ's reasoning is therefore not sustained.

In conclusion, except as noted, the ALJ provided adequate reasons for finding Mr. Hughes not credible. This court may sustain an ALJ's overall credibility decision even if specific findings are not upheld. *Batson*, 359 F.3d at 1197. The ALJ's credibility decision is based upon substantial evidence and is affirmed.

### III.    Lay Witness Testimony

Mr. Hughes submits that the ALJ should have credited the testimony of his wife, Janna Hughes. Pl.'s Opening Br. 16-17. Mr. Hughes also contends that Ms. Hughes' testimony establishes that he has a mental impairment, which the ALJ should have found "severe" at step two in the sequential proceedings. *Id.* at 16.

The ALJ did not find Ms. Hughes not credible. The ALJ found her statements "credible to the extent that they are consistent with the medical record," but noted that "there is little evidence" of a depressive disorder in Mr. Hughes' medical record. Tr. 23.

Mr. Hughes cites Dr. Schilperoot's notation that Mr. Hughes exhibited anger and physiatrist[1] Dr. Hill's comment that he appeared mildly depressed. Pl.'s Opening Br. 17. However, Drs. Schilperoot and Hill did not diagnose depressive or mental disorders. Tr. 378-88, 407-08. The ALJ need not credit lay testimony inconsistent with the medical record. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 1995). Furthermore, lay testimony may not establish an impairment at step two in the sequential proceedings because step two determinations are based upon medical evidence only. 20 C.F.R. § 404.1520(a)(4)(ii). The medical evidence does not

---

[1] A physiatrist is a physician specializing in physical medicine and rehabilitation. Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* ( 5th ed. 1998).

PAGE 8 - OPINION AND ORDER

establish a relevant diagnosis and the ALJ's analysis of Ms. Hughes' testimony is therefore affirmed.

## IV.     The ALJ's Step Five Findings

Finally, Mr. Hughes contends that the ALJ's questions to the vocational expert ("VE") at step five of the sequential proceeding was not based upon an appropriate RFC assessment.

The ALJ is not required to include unsupported limitations in his hypothetical questions to a VE.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001).  For the reasons established above, Mr. Hughes fails to show substantive error in the ALJ's evaluation of the medical evidence or Mr. Hughes' credibility in construing Mr. Hughes' RFC assessment.  The ALJ appropriately relied upon this RFC and the VE's testimony in his step five finding.  Mr. Hughes therefore fails to show error in the ALJ's questions to the VE.

## **CONCLUSION**

The Commissioner's decision that Mr. Hughs did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this   29th   day of May, 2008.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge